IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

BRUCE GREEN,

               Plaintiff,

vs.

TRI-CON, INC.,

               Defendant.

No. 1:21-CV-00481-MJT-ZJH

**REPORT AND RECOMMENDATION GRANTING DEFENDANT TRI-CON, INC.'S MOTION FOR SUMMARY JUDGMENT**

This case is assigned to the Honorable Michael J. Truncale, United States District Judge, and is referred to the undersigned United States Magistrate Judge for pretrial management. Doc. No. 1. On September 22, 2021, Plaintiff Bruce Green ("Green") brought this action against his former employer, Defendant Tri-Con, Inc. ("Tri-Con") alleging race discrimination and retaliation pursuant to Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981 and age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"). Doc. No. 1. Pending before the court is Tri-Con's *Motion for Summary Judgment*. Doc. No. 41.

Because Green has failed to show that Tri-Con discriminated or retaliated against him based on his race or age, the undersigned recommends granting Tri-Con's *Motion for Summary Judgment* (Doc. No. 41).

I.    **Factual Background**

Tri-Con employed Green, an African American male, as a truck driver from October 30, 2017, until his termination on January 28, 2020. Doc. No. 18 at 2, ¶ 10. Green was 63 years old when Tri-Con terminated him. *Id.* Tri-Con is a fuel distribution business that employs approximately six drivers to make fuel deliveries to its customers in the greater Beaumont area.

Doc. No. 41 at 3–4.  While employed by Tri-Con, Green was directly supervised by dispatch managers Art Cawthon ("Cawthon") and Mitia Gueorguiev ("Gueorguiev").  Doc. No. 41 at 5.  On a typical workday, Tri-Con drivers report to work at the Tri-Con office and receive dispatch orders designating the amount of fuel to pick up from a fuel dispensary and the specific quantities of fuel to deliver to each customer.  *Id.* at 6–7.  Tri-Con expects drivers to make five deliveries of fuel per day.  Doc. No. 41 at 7.  Drivers are paid by the hour, not by the load, and Tri-Con provides raises to its drivers only if they performed their duties in accordance with the basic job expectations.  Doc. No. 51 at 3; Doc. No. 41-12 at 155.  Green did not receive any raises while employed at Tri-Con.  Doc. No. 51 at 7.

Tri-Con's fuel trucks are subject to weight regulations promulgated by the U.S. Department of Transportation ("DOT").  Doc. No. 51 at 4; Doc. No. 41 at 4.  The DOT mandates that a fuel truck cannot exceed 80,000 pounds in gross weight.  Doc. No. 41 at 4; Doc. No. 51 at 3.  Additionally, each axle has a maximum weight limit: 12,000 pounds on the front axle, 34,000 pounds on the second axle, and 34,000 pounds on the rear axle.  *Id.*  Tri-Con's fuel trucks have a fifth wheel that can be deployed to adjust the "per axle" weight to bring the axles into compliance if the weight loaded on any of the individual axles exceeds the legal limit.  Doc. No. 41 at 4–5; Doc. No. 51 at 3.[1]

Throughout 2019, Green refused to haul loads in the specific amount dispatched to him at least ten times and possibly more than twenty times.  *See* Doc. No. 51-1 at 180–81; Doc. No. 51 at 4.[2]  Green did so because he often believed that his truck would be overweight in gross or over

---

[1] The parties dispute the level of difficulty of using the fifth wheel to re-distribute weight on the axles, but nonetheless agree that Tri-Con fuel trucks were equipped with a fifth wheel. *See* Doc. No. 41 at 4–5; Doc No. 51 at 3.

[2] In his deposition, Green was asked how many times he had refused to haul a load that he believed was overweight and cut the load to where he saw fit, and he answered that he had done this "more than ten" and "maybe" more than 20 times.  *See* Dep. of Bruce Green, Doc. No. 51-1 at 180–81.

2

the axles if he filled his truck with the precise amount of fuel Tri-Con dispatched to him.  Doc. No. 51 at 3–4.  Driving an overweight truck could be a dangerous endeavor and could lead to legal consequences, such as receiving a ticket.  Doc. No. 51 at 4.  Specifically, Green was most often concerned about whether the weight distributed over the axles complied with DOT regulations. Doc. No. 41 at 11; Doc. No. 51 at 3–4.  Green raised his concerns with Tri-Con management, who investigated the concerns and ultimately determined that they were without merit.  Doc. No. 41 at 11.  According to Tri-Con, Green could mitigate any concerns about the distribution of weight over the axles by deploying the truck's fifth wheel.  *Id.*  However, according to Green, deploying the fifth wheel to distribute the load involved a complicated and time-consuming process that would reduce the number of loads a driver could deliver in one day.  Doc. No. 51 at 3.  Further, Green alleges that even if the fifth wheel was used, the fuel could not necessarily be redistributed along the axles to bring the load into compliance with DOT regulations.  *Id.*

When Green believed Tri-Con had dispatched him an overweight load, he would fill his truck with less fuel than the amount dispatched so that according to his personal calculations, the load complied with DOT regulations.  Doc. No. 41 at 10–11; Doc. No. 51 at 4.  Green repeatedly under-filled loads based on directives from Tri-Con management that he could under-fill his tanks if he felt unsafe driving a load as dispatched.[3]  Doc. No. 41 at 10; Doc. No. 41-1 at 5, ¶ 15. Nonetheless, Tri-Con maintains that Green was expected to deliver the fuel in the amounts dispatched.  Doc. No. 41 at 11.  According to Tri-Con, under-delivering loads has a financial cost

---

[3] The parties dispute how many times this directive was given.  Cawthon, one of Tri-Con's dispatch managers, texted Green: "Bruce if you're uncomfortable with the weight on any of your loads adjust as u see fit and text me please."  Doc. No. 41-3 at 7.  Tri-Con alleges that the directive to under-fill the tanks included in this text message was limited to a single day and was given because Tri-Con needed Green to fulfill his deliveries for that particular day.  Doc. No. 41 at 10–11.  On the other hand, Green alleges that Tri-Con management gave him this directive on several different occasions.  Doc. No. 51 at 4.  Regardless of the scope of the directive or how many times it was given, Green admits that he repeatedly cut the loads dispatched to him that he perceived were illegally overweight. Doc. No. 51-1 at 180–81.

to the company because a new load would have to be dispatched to make up for the short delivery. Doc. No. 41-1 at 3–4, ⁋ 8.

Additionally, Green experienced frequent mechanical issues with his assigned truck that necessitated repairs. Doc. No. 41 at 9. These issues ranged from minor repairs such as having his tires checked or brakes tightened to more significant issues such as the presence of ABS lights, broken signal lights, and broken airbags. Doc. No. 41 at 9; Doc. No. 51 at 5. Green believed he was assigned an older truck which broke down more frequently and necessitated repairs, while other younger, white drivers were allowed to drive Tri-Con's newer trucks, which broke down less frequently. Doc. No. 51 at 5. According to Green, when his truck broke down, Tri-Con sent him home without pay while allowing younger, white drivers to stay on the clock, waiting at the office. Doc. No. 51 at 5–6.

Green first complained about race and age discrimination to Tri-Con management regarding his truck assignments, load assignments, and being sent home without pay at some point in July 2019.[4] Doc. No. 51 at 7. Green alleges that between July and September 2019, he was assigned "significantly fewer" hours to work and was occasionally assigned fewer loads. *Id.* at 6. Because Green was repeatedly cutting his assigned loads throughout 2019, Tri-Con began informally counseling him to stop shedding weight and deliver the product as dispatched. Doc. No. 41 at 11; Doc. No. 41-1 at 5, ⁋ 16. On August 20, 2019, Green received a written warning from Tri-Con. Doc. No. 41 at 12; Doc. No. 41-5 at 25. The warning instructed him to stop cutting fuel from the loads dispatched to him and instead carry loads in the quantities assigned to him, or

---

[4] The record does not identify the specific date in July 2019 on which Green complained of discrimination to Tri-Con management. *See generally* Doc. No. 51 at 7.

risk termination. *Id.* In November 2019, Green complained about discrimination a second time.[5] Doc. No. 51 at 7.

On January 28, 2020, the day of Green's termination, Tri-Con management presented Green with a specific dispatch order for a fuel delivery and asked him to deliver it. Doc. No. 41 at 12–13; Doc. No. 51 at 8. The gross weight of the load complied with DOT regulations, but Green was concerned about the distribution of the weight over the axles. Doc. No. 51 at 8; Doc. No. 41 at 12. Green refused to deliver the load because of this concern. Doc. No. 41 at 13. Tri-Con then asked Green if he would travel with another driver to a weigh station to have the load officially weighed to determine whether it was overweight on the axles, and Green refused. Doc. No. 41 at 13. Tri-Con subsequently fired Green for "insubordination" after this incident. *Id.* On February 3, 2020, Tri-Con brought a load that was identical to the one offered to Green to a weigh station and verified that the load indeed complied with DOT regulations. *Id.*

## II.    **Procedural History**

On November 23, 2020, Green filed a charge of discrimination against Tri-Con with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination, age discrimination, and retaliation. Doc. No. 18 at 10, ¶ 37. On February 24, 2021, the EEOC issued its "right-to-sue" letter, stating that it would not proceed further with an investigation and that Green may file a lawsuit within ninety (90) days of receipt of the letter. *See* Ex. A to Def.'s Original Answer, Doc. No. 20-1 at 2. On September 22, 2021, Green, then proceeding *pro se*, filed the instant lawsuit against Tri-Con. Doc. No. 1. Thereafter, Green retained counsel, and on April 19, 2022, filed an *Amended Complaint* alleging causes of action under Title VII, the Age Discrimination in Employment Act ("ADEA") and 42 U.S.C. § 1981. Doc. No. 18 at 10–15.

---

[5] The record also does not identify the specific date in November 2019 on which Green complained of discrimination for the second time.

On July 27, 2022, Tri-Con filed a *Motion for Summary Judgment Based Upon Failure to Timely File Lawsuit*. Doc. No. 26. On December 13, 2022, the undersigned issued his Report and Recommendation denying *Defendant's Motion for Summary Judgment*. Doc. No. 36. On March 3, 2023, Tri-Con filed the instant *Motion for Summary Judgment*. Doc. No. 41. On April 19, 2023, Green filed his *Response* to Tri-Con's motion. Doc. No. 51. On May 5, 2023, Tri-Con filed its *Reply to Plaintiff's Response*. Doc. No. 57.

### III.    Legal Standards

#### A. Rule 56(a): Summary Judgment

Summary judgment shall be granted when the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Edwards v. Oliver*, 31 F.4th 925, 929 (5th Cir. 2022). A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material when it is relevant or necessary to the ultimate outcome of the case. *Id.* ("[T]he substantive law will identify which facts are material"). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *See Celotex*, 477 U.S. at 323; *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433 (5th Cir. 2005). The court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009).

The movant must support its assertion by "citing to particular parts of materials in the record . . . showing that the materials cited do not establish the . . . presence of a genuine dispute,

or [showing] that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56 (c)(1)(A)–(B). "[T]he court . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tennessee Gas Pipeline Co*, 136 F.3d 455, 458 (5th Cir. 1998).

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). As a result, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012) (quoting *Harvill*, 433 F.3d at 433). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322.

"Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'a better course would be to proceed to a full trial.'" *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995) (quoting *Anderson*, 477 U.S. at 255–56).

## IV.    Discussion

### A.  Green cannot establish a claim for race discrimination.

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When the plaintiff lacks direct evidence of discrimination, the court applies the *McDonell Douglas* burden-shifting framework. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). To survive summary judgment under *McDonnell Douglas*, Green must first present evidence of a prima facie case of discrimination. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). If Green successfully establishes a prima facie case of discrimination, that raises an inference of intentional discrimination and "the burden of production shifts to [Tri-Con], who must offer an alternative non-discriminatory explanation for the adverse employment action." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). If Tri-Con does that, the burden shifts back to Green "to demonstrate that the employer's explanation is merely a pretext for racial bias." *Id.*

Here, Green asserts two race discrimination claims against Tri-Con under Title VII and 42 U.S.C. § 1981: (1) reduced work hours and loss of pay and (2) termination of employment. Doc. No. 51 at 12. The undersigned will consider each claim separately.

### 1. Reduced Hours and Loss of Pay Claim

#### a. Prima Facie Case

To establish a prima facie case of racial discrimination in employment, Green must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than other "similarly situated" employees who were not members of the protected class, under nearly identical circumstances. *Lee*, 574 F.3d at 259. Tri-Con concedes the first three elements in this case: Green is (1) African American, (2) an experienced truck driver, and (3) has alleged a reduction in hours and pay. Doc. No. 51 at 1–2.

8

Tri-Con disputes only the fourth element and argues that Green has not identified anyone similarly situated, and thus fails to meet his burden of establishing a prima facie case of discrimination. Doc. No. 41 at 15.

To establish the similarly situated element, Green must "identify at least one coworker outside of his protected class" who was treated more favorably "under nearly identical circumstances." *Alkhawaldeh*, 851 F.3d at 426. This co-worker is known as a "comparator." *Id.* "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee*, 574 F.3d at 260. Critically, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* "Nearly identical" is not synonymous with perfectly identical,[6] but a proper comparator must have a *comparable* number of disciplinary violations or infractions. *Id.* (emphasis added).

Green offers Tri-Con truck drivers Ron Guarnere ("Guarnere") and Dustin Chamberlain ("Chamberlain") as comparators for his race discrimination claim for reduced hours and pay. Doc. No. 51 at 13. Guarnere and Chamberlain held the same job and reported to the same supervisors as Green. Doc. No. 51 at 3; Doc. No. 51-2 at 27. However, Guarnere and Chamberlain are not "similarly situated" comparators because Green has not alleged that either driver has *any* history of disciplinary violations or infractions, let alone a history of infractions comparable to Green's own history. *See generally* Doc. No. 51 at 13–15. Instead, he simply argues that Guarnere and

---

[6] As the court in *Lee* noted, "applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical." *Id.*

Chamberlain were both white and younger than him and were assigned more hours between July and September 2019. *Id.* at 14. Additionally, Green argues that both Guarnere and Chamberlain received raises during this time frame, while he did not. *Id.* This is not enough to establish that Guarnere and Chamberlain were "similarly situated" to Green.

To successfully establish the "similarly situated" prong, Green would have to show that he, Guarnere, and Chamberlain had "essentially comparable" disciplinary records while employed by Tri-Con, yet Green suffered a reduction in hours and pay while Guarnere and Chamberlain did not. Green's own evidence on summary judgment demonstrates his disciplinary record. The most consistent issue was his refusal to haul loads as dispatched that he believed were overweight "more than ten" times, and "maybe" more than twenty times. *See* Dep. Bruce Green, Doc. No. 51-1 at 180–81. This frustrated Tri-Con management and prompted them to take escalating disciplinary measures against Green: informal counseling to stop cutting the loads he was dispatched; a written warning to stop cutting loads or face termination; and finally, a request to haul a specific load, which Green refused. Doc. No. 41 at 11–13.

At a minimum, Green would have to show that Guarnere or Chamberlain had refused to haul loads at least ten times and had experienced similar escalating disciplinary measures from Tri-Con, including some form of informal counseling and a written warning. Green fails to show this because he has not provided any evidence of Guarnere or Chamberlain's violation history. An independent review of the summary judgment record yields nothing further. Thus, Green has not identified a similarly situated comparator and cannot establish a prima facie case of race discrimination regarding a reduction in hours or loss of pay.

Similarly, in *Alkhawaldeh*, the plaintiff—who identified as a Muslim Jordanian Arab— was (1) titled "Functional Scientist/Functional Leader," (2) given the lowest possible evaluation

rating, (3) placed on a "Performance Improvement Plan," and (4) terminated. 851 F.3d at 425–26. The court stated that a proper comparator would be a non-Muslim Jordanian Arab who was also a Functional Scientist/Functional Leader, given the lowest evaluation rating, and placed on the Performance Improvement Plan, but who was *not* terminated. *Id.* at 426-27. Because the plaintiff did not successfully identify a comparator who matched that description, he could not establish a prima facie case of discrimination. *Id. See also Hinga v. MIC Group, L.L.C.*, 609 F. App'x 823, 828 (5th Cir. 2015) (finding that plaintiff was not similarly situated to proffered comparators where plaintiff had one prior reprimand from supervisor, but comparators had no history of reprimands at all); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 218 (5th Cir. 2016) (finding that plaintiff did not establish proper comparators where she did not show that the proffered comparators shared her history of violations at work).

Accordingly, Green has not established the fourth element of his prima facie burden because he has not shown that he was "similarly situated" to his proffered comparators.

### b.  Legitimate, Non-Discriminatory Explanation

Even if Green had introduced sufficient proof to establish a prima facie case of race discrimination, Tri-Con has proffered a legitimate, non-discriminatory explanation for the adverse employment action: Green's lack of productivity.  Doc. No. 57 at 5–6.  Poor work performance can be a legitimate, non-discriminatory explanation when coupled with specific examples.  *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (holding that poor work performance was a legitimate, non-discriminatory reason for employee's termination where employee received numerous poor performance reviews); *see also Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 455 (5th Cir. 2013) (holding that employer's proffered

reason of substandard work was a legitimate, non-discriminatory reason because employer provided specific examples of such work).

Here, Tri-Con has supported its proffered explanation, Green's lack of productivity, with specific examples. For instance, Green was expected to make five deliveries per day and consistently failed to meet that target. *Id.* at 4; Doc. No. 41-1 at 4, ¶ 9. Additionally, Tri-Con alleges that Green consistently complained about issues with his truck that necessitated repairs and precluded him from making his deliveries and accruing hours. Doc. No. 57 at 4–5. Finally, Tri-Con alleges that Green was offered the opportunity to work in the warehouse or yard when his truck was undergoing repairs, but never did so.[7] *Id.* at 5.

Courts do not assess an employer's credibility or the truthfulness of its reason at this stage of the *McDonell Douglas* inquiry, as the employer's burden is one of production, not persuasion. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236 (5th Cir. 2016); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Tri-Con has produced specific examples of Green's lack of productivity, and these examples support Tri-Con's assertion that Green's fewer hours and lack of raises were due to his poor performance. Thus, Tri-Con has met its burden of production at the second step of the *McDonnell Douglas* framework, and the burden shifts back to Green to show pretext.

c.  Pretext

Since Tri-Con has proffered legitimate, non-discriminatory reasons for Green's reduced work hours and loss of pay, Green must produce "substantial evidence" showing that Tri-Con's reason is a pretext for discrimination. *Watkins v. Tregre*, 997 F.3d 275, 283 (5th Cir. 2021).

---

[7] The parties dispute whether Green was offered the option to work in the yard. Green argues that he was never given the option. Tri-Con argues that he was given the option, but refused. Nonetheless, Green did not ultimately work in the yard.

"Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). "The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456–57 (5th Cir. 2019). Here, Tri-Con's proffered reason for Green's reduced hours and loss of pay is his lack of productivity, so to prevail at this stage, Green must show that "reasonable minds could disagree" that Green's lack of productivity was, in fact, the reason for his discharge. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022) (citing *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020).

Green can meet this burden through evidence of disparate treatment or evidence showing that Tri-Con's explanation is false or "unworthy of credence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). "[E]mployment laws do not transform federal courts into human resource managers, so the inquiry is not whether [Tri-Con] made a wise or even correct decision to terminate [Green]." *Owens*, 33 F.4th at 826. Rather, "the ultimate determination in every case is whether, viewing all the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination." *Id.* "The evidence must be of sufficient nature, extent, and quality to permit a jury to reasonably infer discrimination." *Id.* (internal quotations omitted). Finally, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."[8] *Reeves*, 530 U.S. at 148.

---

[8] The Supreme Court has said that "[f]or instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the

Green contends that Tri-Con did not offer a legitimate, non-discriminatory reason for Green's reduction in hours, and thus, Green is not required to present evidence of pretext on this claim. Doc. No. 51 at 15. Green cites *Tyler v. Union Oil Company of Colorado*, 304 F.3d 379, 395 (5th Cir. 2002) in support of this argument, but *Tyler* does not support this proposition. Because Green does not even discuss pretext, he cannot establish that Tri-Con's proffered reason for his reduced hours and pay was pretext for race discrimination.

Additionally, Tri-Con raises the "same actor inference" regarding pretext for each of Green's discrimination claims. Doc. No. 41 at 23. "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either [initially] hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–22 (5th Cir. 2009). This inference, however, is rebuttable. *Id.* at 422; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 n.16 (5th Cir. 2000). The same actor inference applies here because Cawthon and Sarkis made the decision to hire Green, and the same two also made the decision to terminate his employment. Doc. No. 41 at 1; Doc. No. 41-1 at 5, ¶ 18. Even though the presumption is raised, Green can rebut it by providing evidence that discrimination occurred. *Russell*, 235 F.3d at 229 n.16. Green has not done so, and thus, his race discrimination claim for reduced hours and pay fails.[9]

In sum, Green cannot establish a prima facie case of race discrimination for reduced hours and loss of pay because he has not identified similarly situated comparators. His claim fails on this prong alone. Second, even if he could establish a prima facie case, Tri-Con has successfully

---

plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

[9] The undersigned considers Tri-Con's argument about the same actor inference with respect to all of Green's age and race discrimination claims. Green has not introduced evidence of pretext sufficient to rebut the inference on any of his race or age discrimination claims.

articulated a legitimate, non-discriminatory reason for Green's reduction in hours and lack of raises. Finally, Green has failed to introduce sufficient evidence of pretext. Accordingly, Green's race discrimination claim for reduced hours and pay fails.

## 2. Termination

Green's race discrimination claim for termination is assessed under the same *McDonnell Douglas* burden shifting framework discussed above.

### a. Prima Facie Case

To establish a prima facie case of race discrimination for his termination, Green offers Tri-Con truck driver Don Sealy ("Sealy"), a white male, as a comparator. Doc. No. 51 at 10–11, 17–18. Sealy held the same job and reported to the same supervisors as Green. Doc. No. 18 at 4, ¶ 15. However, Green and Sealy do not have "essentially comparable violation histories" for the purpose of determining a similarly situated comparator. Green argues that similar to his own history of refusing to deliver loads Green believed were illegal, Sealy had also refused to haul a load of fuel when he was unsure that the load complied with Coast Guard regulations.[10]

This comparison fails because Green had a far more extensive violation history than Sealy. Green only highlights one instance of Sealy refusing to take a load, while Green admits in his own deposition testimony that he refused to carry a load as dispatched "more than ten" and "maybe" more than twenty times. *See* Dep. Of Bruce Green, Doc. No. 51-1 at 180–81; Doc. No. 57 at 6–7. Additionally, Tri-Con took the escalating disciplinary measures of informal counseling, a written warning, and a request to haul a specific load. Doc. No. 41 at 11–13. Green has not alleged that

---

[10] The summary judgment record reveals that an incident occurred where Sealy raised concerns to Tri-Con that a load dispatched to him for an offshore delivery of fuel to Louisiana did not comply with applicable Coast Guard regulations. *Id.*; Doc. No. 51 at 10. Because of his concerns, Sealy initially refused to deliver the load. Doc. No. 51 at 17–18; Doc. No. 41 at 16. Tri-Con's response was to suspend the delivery and investigate the concern. Doc. No. 41 at 16. Tri-Con ultimately concluded that the load complied with the applicable restrictions and the load was delivered. *Id.* The parties dispute whether it was Sealy or another driver who made the ultimate delivery of this load, but whether Sealy or another driver actually delivered the load is immaterial to the "similarly situated" analysis.

Sealy refused to deliver a load more than once and has not identified *any* disciplinary actions taken against Sealy.  An independent review of the summary judgment record yields nothing further.  At a minimum, Green would have to show that Sealy had refused to haul loads at least ten times and had experienced similar escalating disciplinary measures from Tri-Con, including informal counseling and a written warning.  Green has not done so, and thus, his argument that Sealy is a similarly situated comparator fails.

Green cites *Allen v. United States Postal Service* for the proposition that even though the comparator may lack a history of misconduct, at the summary judgment stage, a court cannot make a dispositive finding that the comparator's violation history is different from the plaintiff's.  Doc. No. 51 at 18–19; 63 F.4th 292, 302 (5th Cir. 2023).  In doing so, Green ignores a significant distinction between the facts in *Allen* and the facts here.  In *Allen*, the plaintiff submitted sworn statements contradicting the misconduct with which she was charged, which created a fact issue that prevented the court from reaching a dispositive finding on her violation history.  63 F.4th at 302.  In contrast, here, Green does not dispute that the misconduct with which he is charged occurred or otherwise contradict his disciplinary record—he admits to it in his own summary judgment evidence.  *See* Doc. No. 51 at 7; Dep. Of Bruce Green, Doc. No. 51-1 at 180–81.[11]  Thus, *Allen* is inapplicable here.

Accordingly, Green has not established the fourth element of his prima facie burden because he has not shown that he was "similarly situated" to his proffered comparator.

---

[11] *See* Doc. No. 51 at 7 ("Green admits he refused to drive the overweight truck for which he was allegedly terminated. He also refused to drive it to the weight station and weigh it for fear that he might be stopped by police on the way there"); Dep. Of Bruce Green, Doc. No. 51-1 at 180–81 (Green acknowledges he refused to haul a load and cut the load to what he believed was a legal weight "more than ten" and "maybe" more than 20 times).

b.  Legitimate, Non-Discriminatory Reason

Even if Green introduced sufficient proof to establish a prima facie case of race discrimination, Tri-Con has offered a legitimate, non-discriminatory explanation for the adverse employment action: insubordination for refusing to drive a load as dispatched after being counseled and receiving a written warning for refusing to do so.  Doc. No. 41 at 19.  An employee's insubordination is a legitimate, non-discriminatory reason for an adverse employment action in the discrimination context.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (finding insubordination as one of several legitimate, nondiscriminatory reasons for termination); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 416 (5th Cir. 2007) (same).  Thus, because Tri-Con has articulated a legitimate, non-discriminatory explanation for Green's termination, the burden shifts back to Green to prove that this reason is a pretext for race and age discrimination.

c.  Pretext

At the pretext stage, Green must show that "reasonable minds could disagree" that insubordination was, in fact, the reason for his termination.  *Owens*, 33 F.4th at 826.  Green has failed to present sufficient evidence to create doubt about whether Tri-Con's reason was a pretext for race discrimination.

First, Green alleges disparate treatment as proof of pretext, arguing that Sealy was not terminated for refusing to haul a load, while Green was allegedly terminated for the same activity. Doc. No. 51 at 17–18.  However, as discussed above, Green's own summary judgment evidence demonstrates the difference between Sealy's refusal to carry a load as dispatched one time and Green's refusal to carry loads as dispatched at least ten times.  Sealy is not similarly situated to Green and is thus not a proper comparator, so Green has not established disparate treatment as

proof of pretext.  Second, Green alleges that his "staged termination" is proof of pretext, but he does not provide evidence as to how the circumstances of his termination evidence a racially discriminatory motive by Tri-Con.  Doc. No. 51 at 22.  This argument thus fails to show pretext for race discrimination.

Finally, Green asserts that he was fired for refusing to haul loads that made him uncomfortable, even though Sarkis admitted he could do that, and he was fired even though drivers were told they could shed fuel to meet weight limitations.  Doc. No. 51 at 22.  Even construed in the light most favorable to Green, the evidence does not show that Tri-Con's explanation for firing Green, his insubordination, was false or unworthy of credence.  These arguments might show that Tri-Con's decision to terminate Green was incorrect based on company policy—perhaps Green is correct that Tri-Con drivers were in fact allowed to refuse loads that made them uncomfortable and to shed fuel to meet weight limitations.  But whether Tri-Con's decision was incorrect or unwise is not at issue in determining pretext.

Rather, the question is whether a reasonable factfinder could infer *discrimination* based on race from the evidence presented by the plaintiff.  Green has failed to produce evidence that Tri-Con's racial discrimination was the actual reason for Green's termination.  As noted in *Owens*, "[e]ven when an employee presents evidence that would allow a jury to conclude that an employer's proffered justification for an adverse action is false, that does not necessarily permit a rational inference that the real reason was discrimination." 33 F.4th at 835.  No rational inference of discrimination can be made here.  Accordingly, Green's claim for race discrimination regarding his termination fails.

**B. Green cannot establish a claim for age discrimination.**

Green asserts age discrimination claims for the same conduct that forms the basis for his race discrimination claims: (1) reduced hours and loss of pay and (2) termination.  Doc. No. 51 at 20–22.  Green's age discrimination claims rely on the same proof as his race discrimination claims, and the arguments are often combined.  *See generally id.*  The same *McDonnell Douglas* burden shifting analysis applies to ADEA age discrimination claims.  *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 311 (1996); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (the standard of proof for Title VII discrimination claims also applies to ADEA claims).

### 1. Reduced Hours and Loss of Pay

Green does not introduce any proof specific to his age discrimination claim for reduced hours and loss of pay.  Instead, he "incorporates the same evidence that he presented in support of his race discrimination claim."  Doc. No. 51 at 20–21.  The undersigned has already determined that Green has not established a prima facie case of race discrimination for reduced hours and loss of pay because he was unable to identify a similarly situated comparator.  Because Green offers no additional evidence of a similarly situated comparator for his age discrimination claim for reduced hours and loss of pay, he fails to establish a prima facie case of age discrimination.  Additionally, Green offers no evidence of pretext regarding this age discrimination claim.  Accordingly, Green's age discrimination claim for reduced hours and loss of pay fails.

### 2. Termination

#### a. Prima Facie Case

To establish a prima facie case of age discrimination, Green must show that he was (1) discharged, (2) qualified for the position, (3) within the protected class when he was discharged, and (4) "either i) replaced by someone outside the protected class, ii) replaced by someone

younger, or iii) otherwise discharged because of his age." *Allen*, 63 F.4th at 301 (internal quotations omitted) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)).

Here, Green has successfully established a prima facie case of age discrimination because he was 1) discharged; 2) qualified for the position of truck driver; 3) 63 years old when discharged, and 4) replaced by a younger driver. Doc. No. 51 at 1–2; Doc. No. 51 at 21. Thus, the burden shifts to Tri-Con to articulate a legitimate, non-discriminatory reason for Green's termination.

### b.  Legitimate, Non-Discriminatory Reason

Just as with Green's race discrimination claim for termination, Tri-Con has asserted a legitimate, non-discriminatory reason for Green's termination: insubordination. This is recognized as a legitimate, non-discriminatory reason for terminating an employee in the age discrimination context. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 476 (5th Cir. 2015). Thus, the burden shifts back to Green to prove pretext.

### c.  Pretext

Green has not introduced sufficient evidence that Tri-Con's proffered reason for his reduced hours or termination was pretext for age discrimination. According to Green, the fact that Sealy refused to haul an illegal load and was not terminated, but Green was terminated for refusing to haul what he believed was an illegal load demonstrates pretext. Doc. No. 51 at 22. As discussed above, Sealy is not a proper comparator because of the differences between his violation history and Green's. Additionally, Green argues that he was terminated for refusing to haul a load which made him uncomfortable, which he was allowed to do, and that he was terminated even though drivers were told they could shed fuel to meet weight limitations. Doc. No. 51 at 22. According to Green, this evidence demonstrates pretext. *Id.* As also discussed above, this evidence does not show that Tri-Con's explanation for firing Green was false or unworthy of credence or allow a

20

reasonable factfinder to infer discrimination based on age. Because this is the only evidence of pretext Green introduces regarding his age discrimination claims, he has failed to establish that Tri-Con's proffered reason for his termination was pretext for age discrimination.

**C. Green cannot establish a claim for retaliation.**

Title VII retaliation claims are subject to the same *McDonnell Douglas* burden shifting framework as discrimination claims. *Alkhawaldeh*, 851 F.3d at 427. Green must first establish a prima facie case of retaliation. *Id.* If he does that, it gives "rise to an inference of retaliation" and the burden shifts to Tri-Con to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* If Tri-Con can articulate such a reason, the burden shifts back to Green to "demonstrate that the employer's [stated] reason is actually a pretext for retaliation." *Id.*

Green asserts two retaliation claims based on: (1) reduced hours and loss of pay and (2) his termination from Tri-Con.

1. Reduced Hours and Loss of Pay Retaliation Claim

a. Prima Facie Case

To assert a Title VII retaliation claim, Green has the initial burden to produce evidence of a prima facie case of retaliation, which requires that he show: (1) he participated in an activity protected by Title VII, (2) his employer took an adverse employment action against him, and (3) there is a causal connection between the adverse employment action and the protected activity. *Alkhawaldeh*, 851 F.3d at 427. An employee has engaged in activity protected by Title VII if they have either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a).

It is undisputed that the first prong of Green's retaliation claim for reduced hours and pay is met. Green's complaints of discrimination to Tri-Con management constitute activity protected by Title VII. *See Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (noting that an employee who files an internal complaint of discrimination engages in a protected activity). Green alleges that he first complained to Tri-Con management about both race and age discrimination in July 2019 regarding truck assignments, load assignments, and being sent home when his truck was broken. Doc. No. 51 at 7. This complaint is sufficient to constitute a protected activity under Title VII.

It is also undisputed that the second prong is met. Green alleges that Tri-Con reduced his hours and failed to provide him with raises, which constitutes an adverse employment action. A reduction in hours is an "adverse employment action" for retaliation purposes. *See Eure v. Sage Corp.*, 61 F. Supp. 3d 651, 666 (W.D. Tex. 2014).

Regarding the third prong, causal connection, close timing between the protected activity and adverse employment action can establish the causal link required to assert a prima facie case of retaliation. *Owens*, 33 F.4th at 835. "The protected act and the adverse employment action must be very close in time to establish causation by timing alone." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (alterations and internal quotations omitted). Here, Green alleges that he complained about discrimination in July 2019, though he does not specify a specific date. *See* Doc. No. 51 at 7. Green also alleges that his hours were reduced between July and September 2019. Doc. No. 51 at 2. Though Green does not specify the exact date of his complaint of discrimination to Tri-Con management, nonetheless, the alleged reduction in hours began within several weeks of his July 2019 complaint.

Two months or less between the protected activity and adverse employment action is usually sufficient to constitute an inference of causation.  *See, e.g., Handzlik v. United States*, 93 F. App'x 15, 19 (5th Cir. 2004) (finding a time lapse of just over two months sufficient to support an inference of causation); *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (unpublished) (finding two-and-a-half month lapse sufficient); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (finding up to four-month lapse sufficient).  *But see Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (finding that a five-month lapse is too much to support an inference of causation).

Therefore, regardless of the specific date of Green's complaint, the time span between the alleged complaint and the adverse employment action is at most several weeks.  This is well within the time frame that the Fifth Circuit has recognized gives rise to an inference of causation.  Thus, Green has established a prima facie case of retaliation.

### b.  Legitimate, Non-Retaliatory Reason

Because Green has established a prima facie case, this gives "rise to an inference of retaliation," and the burden shifts back to Tri-Con to articulate a legitimate, non-retaliatory reason for the adverse employment action.  *Alkhawaldeh*, 851 F.3d at 427.  Here, Tri-Con alleges that Green had reduced hours because of his own lack of productivity at work.  Doc. No. 57 at 4–5. The Fifth Circuit has recognized poor work performance as a legitimate, non-retaliatory reason for termination in the retaliation context, but has not yet addressed "poor work performance" regarding an employer's alleged reduction of an employee's hours.  *See Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019), *as revised* (Dec. 23, 2019); *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007); *Burrell*, 482 F.3d at 416.  Based on this authority, the undersigned is persuaded that poor work performance is also a legitimate, non-

retaliatory reason for Green's loss of hours and pay.  Thus, the burden now shifts back to Green to prove that this proffered reason is a pretext for retaliation.

### c.  Pretext

To demonstrate pretext in the context of retaliation claims, Green must show that the conduct protected by Title VII was a but-for cause of the adverse employment decision.  *Owens*, 33 F.4th at 835.  Showing but for causation requires more than just "mere causal connection"—"[i]t requires that the plaintiff show that protected conduct was *the* reason for the adverse action." *Id.*  No liability for retaliation arises if "the employee would have been terminated even in the absence of the protected conduct."  *Id.*  Thus, here, Green is required to show that his complaint of discrimination was *the* reason for his reduction in hours and loss of pay.

Green argues that he is not required to present evidence of pretext on his retaliation claim for reduced hours and loss of pay because Tri-Con has not proffered a legitimate, nondiscriminatory explanation for reducing his hours.  Doc. No. 51 at 26.  Because Green does not produce any evidence of pretext, he has not established a genuine dispute of material fact on this prong.  Accordingly, Green's retaliation claim for reduced hours and loss of pay fails.

### 2.  Termination Retaliation Claim

The same *McDonnell Douglas* burden shifting rules applied in the preceding section apply here.  Green must first demonstrate a prima facie case of retaliation, which shifts the burden to Tri-Con to demonstrate a legitimate, non-retaliatory reason for the adverse employment action taken, and if Tri-Con does so, the burden shifts back to Green to demonstrate that Tri-Con's proffered reason is pretext for retaliation.  *Alkhawaldeh*, 851 F.3d at 427.

24

a. <u>Prima Facie Case</u>

It is undisputed that the first prong, activity protected under Title VII, is met regarding Green's retaliation claim for termination. Green alleges that he complained to Tri-Con management about both race and age discrimination for the second time in November 2019 regarding truck assignments, load assignments, and being sent home when his truck was broken. Doc. No. 51 at 7. Green's complaints of discrimination to Tri-Con management constitute activity protected by Title VII. *See Rodriquez*, 540 F. App'x at 328.

The second prong, adverse employment action, is also established. Green was terminated by Tri-Con on January 28, 2020 (Doc. No. 51 at 2), which constitutes an adverse employment action. *See Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996) (recognizing termination as an adverse employment action in the retaliation context).

Finally, the third prong, causation, is established. Green alleges that he complained about discrimination for the second time in November 2019, though he does not specify a specific date. *See* Doc. No. 51 at 7. Green was terminated on January 28, 2020. Doc. No. 51 at 2. This is a lapse of about two months, which is well within the time frame that the Fifth Circuit has recognized gives rise to an inference of causation. *See, e.g., Handzlik*, 93 F. App'x at 19. Thus, Green has established a prima facie case of retaliation, and the burden shifts to Tri-Con to offer a legitimate, non-discriminatory reason for his termination.

b. <u>Legitimate, Non-Retaliatory Reason</u>

Here, Tri-Con alleges that it terminated Green because "he refused to drive the load as dispatched after being counseled and written up for refusing to do so." Doc. No. 41 at 19. Additionally, Green refused to ride along with another Tri-Con driver to have the load weighed. *Id.* Tri-Con's proffered reason for Green's termination was his insubordination. *Id.*

Insubordination is a legitimate, non-discriminatory reason for an adverse employment action in the retaliation context. *See Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001). Thus, because Tri-Con successfully articulated a legitimate, non-retaliatory reason for Green's termination, the burden now shifts back to Green to prove that this proffered reason is a pretext for retaliation.

### c. Pretext

Regarding his retaliation claim for termination, Green raises several arguments. Two are the same arguments he raised for his discrimination claims: his termination was staged and Sealy was treated more favorably for engaging in the same conduct. Doc. No. 51 at 26. He also argues that Sarkis' comment that "his patience is running thin" demonstrates pretext. *Id.* at 27. Finally, Green argues that Tri-Con violated its termination policies when firing him, but does not cite any evidence in the summary judgment record for this assertion. *Id.* These arguments, even if assumed as true, do not establish that Green would not have been terminated *but for* his complaints of discrimination. In contrast, the summary judgment record shows that Green could have plausibly been fired for refusing to haul loads regardless of his discrimination complaints. Thus, Green has failed to show pretext because he has not shown that his complaints of discrimination were the but-for cause of his termination. Accordingly, Green's retaliation claim for his termination fails.

## V.    **Recommendation**

Tri-Con has met its summary judgment burden of demonstrating that there are no genuine issues of material fact in dispute. Green has not satisfied his burden through specific citations to the summary judgment evidence that Tri-Con discriminated against him based on race or age or retaliated against him. Therefore, the undersigned recommends **GRANTING** Defendant Tri-Con, Inc.'s *Motion for Summary Judgment* (Doc. No. 41).

## VI.    <u>Objections</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within <u>**seven (7) days**</u> after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within <u>**seven (7) days**</u> of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge.  *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 17th day of October, 2023.

Zack Hawthorn
United States Magistrate Judge

27